IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

RICKY GLEASON,

      Plaintiff,

v.                           CASE NO. 2:04-cv-01289

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Ricky Duane Gleason (hereinafter referred to as "Claimant"), protectively filed an application for DIB on June 14, 2002, alleging disability as of May 31, 2002, due to thoracic and cervical sprain. (Tr. at 64-66, 87.) The claim was denied initially and upon reconsideration. (Tr. at 46-49, 52-53.) On March 21, 2003, Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. at 54.)  The hearing was held on September 17, 2003, before the Honorable Theodore Burock. (Tr. at 327-47.)  By decision dated October 20, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-25.)  The ALJ's decision became the final decision of the Commissioner on October 23, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.)  On December 9, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2003).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe

2

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. <u>Id.</u> § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  <u>Id.</u>  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  <u>Id.</u> § 404.1520(e).  By satisfying inquiry four, the claimant establishes a <u>prima</u> <u>facie</u> case of disability.  <u>Hall v.</u> <u>Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2003).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  <u>McLamore v.</u> <u>Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

     In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers

from the severe impairments of cervical disc disease, right shoulder impairment, headaches, anxiety and mood disorders. (Tr. at 14.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, 17.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 15.) As a result, Claimant cannot return to his past relevant work. (Tr. at 21.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier, small-parts assembler and lobby attendant/ticket-taker, which exist in significant numbers in the national economy. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

4

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was almost forty years old at the time of the administrative hearing.  (Tr. at 330.)  Claimant graduated from high school.  (Tr. at 332.)  In the past, he worked as an electrician and equipment operator in the coal mines.  (Tr. at 344.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

On May 28, 2002, Ijaz Ahmad, M.D. conducted a neurological evaluation.  Claimant reported that on February 7, 2002, he injured his neck and back while at work.  Claimant reported cervical headaches relieved by Darvocet.  Claimant was working at the time of the evaluation.  Deep tendon reflexes were equal throughout, and the sensory examination was normal.  Dr. Ahmad noted that a

cervical spine MRI on April 18, 2002, showed cervical spondylosis from C4 to C7, more pronounced at C5/C6 with some foraminal stenosis. (Tr. at 124-25.)

An MRI of the right shoulder on May 25, 2002, showed tendonitis of the supraspinatous tendon as well as minimal bursitis in the subacromial subdeltoid bursa. (Tr. at 144.) An MRI of the thoracic spine on May 25, 2002, showed diffuse degenerative changes throughout the dorsal spine. Central or just off midline disc protrusions were noted at multiple levels. There was no significant spinal canal stenosis, spinal cord impingement or nerve root impingement. (Tr. at 142.)

Robert W. Lowe, M.D. examined Claimant on February 19, 2002. Claimant reported he injured his back and shoulder while tightening a bolt in a coal mine. Claimant reported pain on the right side of his neck and right shoulder that occasionally tingles down into his right hand. Claimant reported headaches. Range of motion of the cervical spine was essentially normal. Impingement sign on the right shoulder was painful. There was no pain to pressure over the biceps tendon of the shoulder, and the shoulder had a normal range of motion. Grip strength was normal. Sensory change was noted in the hand. Dr. Lowe diagnosed cervical sprain with some disc degeneration. (Tr. at 141.) Claimant continued to work, and Dr. Lowe told Claimant to be careful with jarring and overhead work. (Tr. at 141.)

On February 26, 2002, Claimant reported to Dr. Lowe that he continued to work, but that he had headaches. Claimant reported traction prescribed by Dr. Lowe helped some. Grip strength was normal. There was no sensory change in the fingers. Dr. Lowe requested approval from workers' compensation for MRIs of the neck and a neurology consult for evaluation of Claimant's headaches. (Tr. at 138.)

On March 29, 2002, Dr. Lowe reported that Claimant's headaches were better, but that Claimant still complained of pain in the neck and right shoulder. (Tr. at 135.) Reflexes were intact in the upper extremities. Phalen's test and Spurling's maneuver were negative. Claimant had a slight tremor in the left hand. Claimant had good motion in the back. (Tr. at 135-36.)

On April 26, 2002, Dr. Lowe noted that Claimant's headaches vary. Dr. Lowe noted that Claimant's cervical spine MRI showed degenerative changes at three levels with a rather prominent C5-6 disc bulge on the lateral view. Claimant also had a disc protrusion at the thoracic 3/4 level. Dr. Lowe noted that "[t]hese changes are enough that I tell the man to be careful, but the clinical picture does not merit operative intervention at this point." (Tr. at 132.) Range of motion of the cervical spine was normal. Claimant had slightly decreased grip strength of the right upper extremity and pain in the third finger on flexing the wrist. Impingement sign of the right shoulder was normal. Dr. Lowe

recommended additional testing and referral to a neurosurgeon because of Claimant's headaches. (Tr. at 132-33.)

On June 4, 2002, Dr. Lowe noted that a thoracic MRI showed a herniated nucleus pulposis, small in several areas of the thoracic spine. The MRI of the shoulder was not that impressive. Claimant moved rather normally without any specific findings. Sitting straight leg raising was 90 degrees, but Claimant reported that his lower back hurt. (Tr. at 127.) Dr. Lowe recommended a lumbar MRI. Dr. Lowe took Claimant off work for one week to see if that helped Claimant's complaints of pain in the lower back. (Tr. at 128.)

Michael R. Condaras, D.C., examined Claimant on August 19, 2002. Mr. Condaras recommended that Claimant undergo a functional capacity evaluation. (Tr. at 150.)

On September 24, 2002, Uma Reddy, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment. Dr. Reddy opined that Claimant could perform light level work with an occasional ability to climb, balance, stoop, kneel, crouch and crawl with some limitation in reaching in all directions, including overhead, and a need to avoid concentrated exposure to vibration and hazards. (Tr. at 150-58.)

On October 4, 2002, N. Arthur Lilly, M.S., A.T.C. reported that a functional capacity evaluation could not be completed because Claimant had elevated blood pressure. (Tr. at 160.)

On October 31, 2002, Ronald J. Horvath, M.D., an orthopedic

8

surgeon, agreed with the exertional and other limitations opined by Dr. Reddy.  (Tr. at 162-63.)

The record includes treatment notes and other evidence from the Aquatic Rehab Center dated August 28, 2002, through January 15, 2003.  (Tr. at 165-204.)

On January 31, 2003, James Egnor, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light level work with an occasional ability to climb, balance, stoop, kneel, crouch and crawl, a limited ability to reach in all directions, including overhead, and a need to avoid concentrated exposure to vibration. (Tr. at 205-12.)

The record includes treatment notes and other evidence from Diane E. Shafer, M.D. dated June 11, 2002, through February 20, 2003.  (Tr. at 214-43.)  On June 11, 2002, Dr. Shafer diagnosed neck sprain and strain, thoracic sprain and strain and sprain and strain of lumbosacral joint/ligament.  (Tr. at 242.)  Dr. Shafer recommended that Claimant increase his exercise, go to physical therapy, use a back brace and pillow and TENS unit, among others. (Tr. at 242.)  On August 7, 2002, Dr. Shafer opined that Claimant was disabled until November 7, 2002.  (Tr. at 238.)  On September 12, 2002, Dr. Shafer referred Claimant to Logan Mingo Mental Health for treatment of depression.  (Tr. at 235.)  On October 17, 2002, upon referral from Dr. Shafer, Claimant underwent an MRI of the LS

9

spine, and it showed a mild degree of central and posterior disc herniation at L5-S1 with dehydrated changes in the intervertebral discs.  MRI of the lumbar spine was otherwise normal.  (Tr. at 243.)

Dr. Shafer completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on March 20, 2003, and opined that Claimant could lift and/or carry ten pounds, but could not lift any weight frequently, that Claimant could stand/walk for four hours in an eight-hour workday, one without interruption; that Claimant could sit for four hours in an eight-hour workday, one without interruption; that Claimant could occasionally climb, balance, stoop, crouch, kneel and crawl; that Claimant's impairment affected his ability to reach, handle, feel, push and pull and see; and that Claimant had environmental restrictions, including heights, moving machinery, temperature extremes, chemicals and dust.  (Tr. at 218.)

On April 16, 2003, Jerry Scott, M.D. examined Claimant in connection with his workers' compensation claim.  Dr. Scott opined that Claimant had reached the maximum degree of medical improvement.  Dr. Scott acknowledged that Claimant was not working and stated that "[g]iven the extent of degenerative disease and the complaints related to this injury as superimposed upon that degenerative disease, it is unlikely that the claimant will resume work as an electrician in the mines.  Consideration should be given

10

to vocational counseling." (Tr. at 248.) Dr. Scott recommended a fifteen percent whole person impairment for workers' compensation purposes. (Tr. at 248.)

On May 13, 2003, David L. Weinsweig, M.D. examined Claimant at the request of Dr. Shafer. Claimant reported neck, right arm, low back and right leg pain. Claimant stated that physical therapy and cervical traction have not helped. Claimant's motor strength was grossly strong, sensation was intact. Reflexes were equal. Claimant's gait was normal and there was no Hoffmann's sign and no ankle clonus. Dr. Weinsweig noted that an MRI of the cervical spine from April of 2002, showed cervical spondylosis at C4 through C5, most significantly at C5-6 and C6-7 to a lesser degree. He noted that an MRI of the lumbar spine in October of 2002, showed disc desiccation at L5-S1 without narrowing of the disc space and some bulging of this disc with borderline herniation. (Tr. at 254.) Dr. Weinsweig further noted that EMG/nerve conduction studies of the upper and lower extremities were normal. (Tr. at 255.) Dr. Weinsweig opined that Claimant suffers from chronic pain, and that while surgery on the cervical spine may be an option, he questioned whether this would help Claimant. He opined that Claimant could not return to his previous employment. (Tr. at 255.)

The record includes additional treatment notes from Logan General Hospital and other evidence from Dr. Shafer dated May 22,

2003, through July 15, 2003. (Tr. at 259-61.) On May 22, 2003, Dr. Shafer opined that Claimant was temporarily disabled until August 22, 2003. (Tr. at 258.) On June 5, 2003, Dr. Shafer estimated that Claimant could return to work on August 5, 2003. (Tr. at 261.) On July 10, 2003, Dr. Shafer completed a Physician Medical/Rehabilitation Plan of Treatment. She opined that Claimant had not reached maximum medical improvement and would not reach it until October 11, 2003. She stated that Claimant needed an MRI and that Claimant's recovery had been hampered by anxiety. She opined that Claimant was unable to bend or lift ten pounds. She opined that Claimant could not return to alternate or modified employment and that he should undergo a functional capacity evaluation. (Tr. at 264-65.)

On April 18, 2003, Claimant underwent a consultative mental examination in connection with his workers' compensation claim and at the request of Dr. Shafer. Claimant was diagnosed with major depression and an anxiety disorder on Axis I. There was no Axis II diagnosis. Claimant's GAF was rated at 55. (Tr. at 266-69.)

The record includes a residual functional capacity evaluation from Physical and Aquatic Rehab, Inc. dated July 29, 2003. Claimant stood for ten minutes, sat for sixteen minutes and was unable to walk any distance. Claimant could not complete the lifting section of the examination, and, as a result, could not be placed in any DOT strength category. Claimant was able to reach

12

for objects in all directions with both arms.  The evaluator opined
that Claimant was unable to return to work in any capacity.  (Tr.
at 279-82.)

The record includes evidence from Logan General Hospital dated
February 13, 2002, February 20, 2002, June 5, 2002, and April 9,
2003.  (Tr. at 283-93.)

Claimant submitted additional evidence from Logan General
Hospital to the Appeals Council, some of which was already before
the ALJ.  In addition, Claimant submitted treatment notes and other
evidence dated September 16, 1994, September 23, 1994, May 23,
1995, January 10, 1997, January 20, 1997, February 25, 1997,
November 25, 1997, February 22, 1999, and October 16, 2000, from
Logan General Hospital.  (Tr. at 304-26.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because (1) the ALJ erred in
disregarding the opinions of Dr. Shafer, Claimant's treating
physician, and the evaluation performed at Physical and Aquatic
Rehab, Inc.; (2) the ALJ failed to consider Claimant's impairments
in combination; and (3) the ALJ erred in his pain and credibility
assessment.  (Pl.'s Br. at 13-18.)

The Commissioner argues that substantial evidence supports the
ALJ's finding that Claimant could perform the limited range of
light work identified by the vocational expert; and (2) the ALJ

properly weighed the evidence of record from Dr. Shafer and
Physical and Aquatic Rehab, Inc.  (Def.'s Br. at 7-10.)

Claimant first argues that the ALJ erred in disregarding the
opinion of Dr. Shafer, Claimant's treating physician, and Physical
and Aquatic Rehab, Inc.  Claimant asserts that Dr. Shafer's
opinions are supported by Dr. Lowe and his findings, the MRI
showing cervical spondylosis from C4-C7 and the results of the
functional capacity evaluation by Physical and Aquatic Rehab, Inc.
(Pl.'s Br. at 14.)

In his decision, the ALJ stated that he considered the
opinions and other evidence from Dr. Shafer.  The ALJ explained
that he could not

> accept Dr. Shafer's assessment for the following reasons:
> Her diagnoses reflected a greater severity than the
> diagnoses of other physicians, who were also specialists
> in relevant areas.  Her clinical findings were repeatedly
> not reproduced in contemporary examinations throughout
> the relevant time period and suggested a greater degree
> of impairment.  Dr. Shafer's observations regarding the
> claimant's functional limitations are inconsistent with
> other evidence of record.

(Tr. at 18.)

Regarding the functional capacity evaluation from Physical and
Aquatic Rehab, Inc., the ALJ explained that he could not

> accept its findings for the following reasons: The
> evaluation was performed by a physical therapist, who is
> not an acceptable medical source.  Although the
> observations of other sources can be considered as
> evidence of the severity of a claimant's impairment(s)
> and how they affect his ability to work, this evaluation
> provides no assurance that the findings are more than a
> report of what the claimant actually did, instead of what

14

he is capable of doing (20 CFR 404.1513(d)). The
evaluation does not include any observations regarding
the claimant's effort, the consistency of his
performance, or whether his performance was compatible
with pain behavior and other clinical signs and symptoms.
There were none of the validity assessments customarily
found in professional functional capacity evaluations.

(Tr. at 18.)

In evaluating the opinions of treating sources, the
Commissioner generally must give more weight to the opinion of a
treating physician because the physician is often most able to
provide "a detailed, longitudinal picture" of a claimant's alleged
disability. See 20 C.F.R. § 404.1527(d)(2) (2003). Under §
404.1527(d)(2)(ii), the more knowledge a treating source has about
a claimant's impairment, the more weight will be given to the
source's opinion. Section 404.1527(d)(3), (4), and (5) adds the
factors of supportability (the more evidence, especially medical
signs and laboratory findings, in support of an opinion, the more
weight will be given), consistency (the more consistent an opinion
is with the evidence as a whole, the more weight will be given),
and specialization (more weight given to an opinion by a specialist
about issues in his/her area of specialty).

Nevertheless, a treating physician's opinion is afforded
"controlling weight only if two conditions are met: (1) that it is
supported by clinical and laboratory diagnostic techniques and (2)
that it is not inconsistent with other substantial evidence." Ward
v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R.

15

§ 404.1527(d)(2) (2003).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. § 404.1527(d)(2) (2003). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  § 404.1527(d)(2).

Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

Under § 404.1527(d)(1), more weight generally is given to an examiner than to a non-examiner.  Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967).

Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's findings regarding the weight afforded the opinions of Dr. Shafer and the functional capacity evaluation by Physical and Aquatic Rehab, Inc. Dr. Shafer's diagnoses and clinical findings were more severe than those of other physicians, including specialists such as Dr. Weinsweig, a neurosurgeon, Dr. Ahmad, a neurologist, and Dr. Lowe, an orthopedic surgeon. For example, Dr. Weinsweig found that straight leg raising and hip rotation did not seem to bother Claimant, and that the neurological examination was normal. In addition, he noted normal EMG/nerve condition studies. (Tr. at 254-55.) Dr. Ahmad noted Claimant's headaches were helped by medication. In addition, his neurological examination was normal. (Tr. at 124-25.) Dr. Lowe found essentially normal range of motion in the cervical spine, indicated surgery was not warranted and stated that Claimant should at most, be careful with jarring and overhead work. (Tr. at 132, 141.)

Nor were the limitations opined by Dr. Shafer on the Medical Assessment of Ability to do Work-Related Activities (Physical) consistent with the other substantial evidence of record. Dr.

17

Weinsweig and Dr. Scott both opined that it was unlikely that
Claimant could return to his previous work, but neither stated that
Claimant was disabled from all work.  (Tr. at 248, 255.)  Dr.
Weinsweig recommended only conservative treatment and felt that
surgery would not help Claimant's condition.  (Tr. at 255.)  All
three State agency medical sources, one of whom was an orthopedic
surgeon, opined that Claimant was capable of light work.  (Tr. at
150-58, 162-63, 205-12.)  Besides, even when Claimant's counsel
included in a hypothetical question to the vocational expert, many
of the limitations opined by Dr. Shafer on the Medical Assessment
of Ability to do Work-Related Activities (Physical), including the
limitation of carrying no weight, the vocational expert did not
eliminate all jobs and instead testified that two of the three jobs
would remain.  (Tr. at 346.)

     The ALJ's explanation for the weight afforded the functional
capacity evaluation by Physical and Aquatic Rehab, Inc. also is
consistent with the applicable regulation and supported by
substantial evidence.  A physical therapist is not a "medical
source" whose opinion must be considered by the Commissioner, but
instead, is considered an "other source" whose opinion may be
considered by the Commissioner.  20 C.F.R. § 404.1513(a) and (d)
(2003).  The ALJ did consider this evidence and reasonably
concluded that the evaluation was entitled to little weight because
there were no validity assessments.

18

In short, the ALJ evaluated Dr. Shafer's opinion and the
functional capacity evaluation from Physical and Aquatic Rehab,
Inc. in keeping with the applicable regulations and case law. The
evidence of record from Dr. Shafer in particular simply was not
consistent with the remaining substantial evidence of record from
sources more qualified than Dr. Shafer. Despite the ALJ's
rejection of this evidence, the ALJ acknowledged that despite
Claimant's young age, he has significant physical limitations. The
ALJ's residual functional capacity finding that Claimant was
limited to light work, reduced by an inability to reach above
shoulder level with his right upper extremity, an ability to
occasionally balance, climb, stoop, kneel, crouch or crawl, an
inability to tolerate any exposure to vibration or extreme cold or
hazards and a need for routine, repetitive tasks is supported by
substantial evidence, particularly the evidence of record from Dr.
Weinsweig, Dr. Lowe, Dr. Scott, Dr. Ahmad and the three State
agency medical sources.

Based on the above, the court proposes that the presiding
District Judge find that the ALJ properly weighed the evidence of
record from Dr. Shafer and Physical and Aquatic Rehab, Inc., and
his findings are supported by substantial evidence.

Next, Claimant argues that the ALJ failed to consider
Claimant's impairments in combination, including Claimant's limited
concentration and memory caused by depression and anxiety,

headaches and the limitations opined by Dr. Shafer and Physical and
Aquatic Rehab, Inc.  (Pl.'s Br. at 15-16.)

    The court proposes that the presiding District Judge find that
the ALJ adequately considered Claimant's impairments alone and in
combination in keeping with 20 C.F.R. § 404.1523 (2003).  The ALJ's
decision and the hypothetical question posed by the ALJ at the
administrative hearing reflect a careful consideration of all of
Claimant's impairments and their combined effect.  The ALJ found
Claimant's anxiety, mood disorders and headaches all to be severe
impairments.  He considered them throughout his decision, including
in his pain and credibility analysis.  (Tr. at 15, 20-21.)  Only
after fully evaluating Claimant's mental impairments in keeping
with the applicable regulation, 20 C.F.R. § 404.1520a (2003), did
the ALJ conclude that Claimant "would be precluded by the
combination of pain, fatigue, and psychological symptoms from
performing detailed or complex work functions." (Tr. at 21.)
Regarding the evidence of record from Dr. Shafer and Physical and
Aquatic Rehab, Inc., the court has addressed their opinions above.
The ALJ's decision reflects a careful consideration of all of
Claimant's impairments alone and in combination, and the court
proposes that the presiding District Judge find that the ALJ's
decision is supported by substantial evidence.

    Finally, Claimant argues that the ALJ erred in his credibility
analysis.  According to Claimant, the ALJ ignored objective

evidence supporting severe conditions that could reasonably produce the pain testified to by Claimant.  (Pl.'s Br. at 16-17.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2003); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors and Claimant's medication.  (Tr. at 15, 19-21.)

The ALJ explained in detail, his finding that Claimant's physical limitations were not supported by the medical evidence of record or the intensity of treatment.  He noted that while the record supports a significant level of chronic pain, Claimant had consistently been prescribed conservative treatment.  In addition, Claimant denied side effects from his medication.  (Tr. at 19.) The ALJ further relied on Claimant's self-described activities, including meal preparation, short shopping trips, laundry, taking daily walks and hunting.  (Tr. at 19-20.)

Thus, the court proposes that the presiding District Judge find that the ALJ's pain and credibility analysis is consistent with the applicable regulation and caselaw and supported by

21

substantial evidence.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

_____November 16, 2005_____
          Date

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge

23